ORDERED.

**Dated: September 18, 2025**

_Caryl E. Delano_
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 2:25-bk-00051-FMD
                                                    Chapter 11

        700 Trust,

           Debtor.

_____/

### ORDER APPROVING INTERESTED PARTIES' APPLICATIONS
### FOR FEES PURSUANT TO ORDER GRANTING MOTION FOR SANCTIONS

THIS CASE came on for hearing on July 16, 2025, at 1:30 p.m., on the Interested

Parties' _Application for Fees Pursuant to Order Granting Sanctions_ (the "Application").[1]

The Application seeks $30,000.00 in attorney's fees against Debtor; Debtor's trustees,

Gregory Myers and Barbara Ann Kelly; and Debtor's counsel, Michael Gort

---

[1] Doc. No. 155. The Interested Parties are Naples Property Holding Company, LLC; Naples Beach Club Land Trust Trustee, LLC, as Trustee; Naples Beach Club Phase II and III Land Trust Trustee, LLC, as Trustee; and NBC Club Owner, LLC; and Tides Note on Note Lender I, LLC.

(collectively, "Respondents") pursuant to the Court's prior order granting the Interested Parties' Motion for Sanctions.[2]

Debtor did not file a written opposition to the Application, but at the July 16 hearing, Debtor's attorney argued that several pending appeals in this case divested this Court of jurisdiction to award sanctions to the Interested Parties. The Court allowed the Interested Parties to brief the jurisdictional issue and to update their fee application to include their additional attorney's fees. The Interested Parties filed a Supplemental Memorandum in support of the Application[3] and their *Updated Application for Fees Pursuant to Order Granting Sanctions* (the "Updated Application").[4]

For the reasons that follow, the Court (1) concludes it has jurisdiction to award sanctions against Respondents and in favor of the Interested Parties; (2) approves the Interested Parties' Application and Updated Application; and (3) awards the Interested Parties $33,000.00 in attorney's fees as a sanction against Respondents.

## I. BACKGROUND

Gregory Myers and Barbara Ann Kelly are the prior owners of a home in Naples, Florida (the "Naples Property"). Since 2009, the Naples Property has been the

---

[2] Doc. No. 140.

[3] Doc. No. 175.

[4] Doc. No. 176.

subject of a foreclosure action and other related litigation (the "Naples Litigation").[5]

Mr. Myers and Ms. Kelly have a lengthy history in the bankruptcy court, having filed

numerous bankruptcy cases in Florida, Maryland, Delaware, and the District of

Columbia.[6]

In January 2023, this Court entered an order dismissing Mr. Myers' Chapter 13

case—which had been pending for two years—with prejudice and with a two-year

bar against refiling.[7]

In December 2023, the Maryland Bankruptcy Court entered an order

dismissing Ms. Kelly's Chapter 13 case and barring Ms. Kelly from filing any further

bankruptcy cases for four years from the date on which the dismissal order became

final and non-appealable. The Maryland Bankruptcy Court's order also granted

prospective stay relief to the Interested Parties with respect to the Naples Litigation,

and imposed an equitable servitude against the Naples Property. The equitable

---

[5] The Naples Litigation, which is styled *U.S Bank N.A. v. Barbara Ann Kelly, et al.*, Case No. 2009-CA-010813, is pending in the Circuit Court for the 20th Judicial Circuit, in and for Collier County, Florida.

[6] *In re Myers*, Case No. 15-bk-26033 (Bankr. D. Md. 2015); *In re Kelly*, Case No. 18-bk-13244 (Bankr. D. Md. 2018); *In re Kelly*, Case No. 18-bk-07142 (Bankr. M.D. Fla. 2018); *In re Myers*, Case No. 19-bk-10392 (Bankr. D. Del. 2019); *In re Myers*, Case No. 19-bk-17428 (Bankr. D. Md. 2019); *In re Kelly*, Case No. 19-bk-24525 (Bankr. D. Md. 2019); *In re Myers*, Case No. 21-bk-00123 (Bankr. M.D. Fla. 2021); *In re Kelly*, Case No. 23-bk-11566 (Bankr. D. Md. 2023); *In re Kelly*, Case No. 23-bk-12700 (Bankr. D. Md. 2023); *In re Myers*, 25-bk-00069 (Bankr. D.D.C. 2025).

[7] *In re Myers*, Case No. 2:21-bk-00123-FMD (Doc. Nos. 368 & 380).

servitude prevents the automatic stay from going into effect as to the Naples Property in any subsequent bankruptcy case filed by Mr. Myers or Mr. Kelly.[8]

On October 24, 2024, the Naples Property was sold at a foreclosure sale to one of the Interested Parties. The Clerk of Court of the 20th Judicial Circuit, Collier County, Florida, issued a certificate of sale to the successful bidder at the sale. But before the Clerk of Court issued a certificate of title, Mr. Myers and Ms. Kelly formed 700 Trust as a business trust and quitclaimed the Naples Property to 700 Trust. Then, acting as the trustees of 700 Trust, Mr. Myers and Ms. Kelly caused 700 Trust ("Debtor") to file a Chapter 11 bankruptcy case in the Northern District of Florida. Attorney Michael Gort represented Debtor in the bankruptcy filing and continues to represent Debtor in this case.

## A. Orders Entered by the Northern District of Florida

Shortly after Debtor filed this bankruptcy case in the Northern District, the Interested Parties filed a motion (1) to confirm the automatic stay did not apply to the Naples Property or the Naples Litigation; (2) to dismiss this case; and (3) to impose monetary sanctions against Mr. Myers, Ms. Kelly, and Mr. Gort (the "Stay Motion").[9]

---

[8] Doc. No. 53-1 at pp. 97-100. The District Court for the District of Maryland affirmed the Bankruptcy Court's ruling. *Kelly v. Naples Property Holding Co., et al.*, Case No. 8:24-cv-00184-DLB (D. Md. Mar. 31, 2025), Doc. Nos. 31 & 32. Ms. Kelly appealed the District Court's ruling to the Fourth Circuit of Appeal, and that appeal, styled *Barbara Kelly v. U.S. Bank, N.A.*, Case No. 25-1474 (4th Cir. 2025), remains pending.

[9] Doc. No. 53.

On December 18, 2024, Chief Bankruptcy Judge Karen Specie conducted a hearing on the Interested Parties' Stay Motion.

On December 20, 2024, Judge Specie granted, in part, the Interested Parties' Stay Motion on an interim basis. Judge Specie ruled that the automatic stay did not apply to the Naples Litigation or the Naples Property (the "Interim Stay Order").[10]

On December 27, 2024, Judge Specie entered a final order determining that the automatic stay did not apply to the Naples Litigation or the Naples Property (the "Final Stay Order").[11] The Final Stay Order also denied the Interested Parties' request to dismiss the case and for sanctions, without prejudice.

Meanwhile, on December 12, 2024, Judge Specie issued an order to show cause directing Debtor to show cause why this case should not be transferred to the Middle District of Florida (the "Show Cause Order").[12] On January 10, 2025, Judge Specie entered a memorandum opinion and order transferring this case to the Middle District of Florida (the "Transfer Order").[13]

---

[10] Doc. No. 80.

[11] Doc. No. 90.

[12] Doc. No. 56.

[13] Doc. Nos. 101 & 102.

## B.    Debtor's Appeals in the Northern District

Debtor timely filed notices of appeal of the Interim Stay Order, the Final Stay Order, the Show Cause Order, and the Transfer Order.[14] On March 6, 2025, the United States District Court for the Northern District of Florida consolidated the four appeals (the "Northern District Appeal").[15] On May 20, 2025, the District Court dismissed the Northern District Appeal for failure to prosecute.[16] Debtor timely appealed the District Court's dismissal of the Northern District Appeal to the Eleventh Circuit, where it remains pending.[17]

## C.    The Middle District's Dismissal and Sanctions Orders

In February 2025, while the Northern District Appeal was pending, the Interested Parties filed a motion to dismiss Debtor's Chapter 11 case (the "Dismissal Motion") and a *Motion for Sanctions Against Gregory Myers, Barbara Kelly, and Debtor's Counsel* (the "Sanctions Motion") in this case.[18]

On May 6, 2025, this Court conducted a hearing on the Dismissal Motion and the Sanctions Motion. On May 12, 2025, the Court entered an order dismissing

---

[14] Doc. Nos. 67, 82, 98 & 109.

[15] *In re 700 Trust*, Case No. 1:24-cv-00237-MW-ZCB (N.D. Fla. Mar. 6, 2025), Doc. No. 16.

[16] *Id.*, Doc. No. 24.

[17] *Id.*, Doc. No. 26; Eleventh Circuit Case No. 25-12109.

[18] Doc. Nos. 115 & 118.

Debtor's Chapter 11 case (the "Dismissal Order")[19] and an order sanctioning

Respondents for filing this case (the "Sanctions Order").[20]

In the Sanctions Order, the Court ordered Respondents to pay the Interested

Parties' attorney's fees[21] and reserved jurisdiction to liquidate the amount of the

Interested Parties' fees.[22]

**D.    Mr. Myers and Ms. Kelly appeal the Middle District's Dismissal and Sanctions Orders.**

On May 29, 2025—three days after the deadline for filing an appeal from the

Bankruptcy Court's May 12, 2025 orders—Mr. Myers and Ms. Kelly filed notices of

appeal of the Dismissal Order and the Sanctions Order.[23] On June 3, 2025, as

authorized by the District Court's *Amended General Order Establishing Protocols for*

*Processing Bankruptcy Appeals*,[24] this Court dismissed the appeals as untimely filed.[25]

Mr. Myers and Ms. Kelly sought the District Court's review of this Court's

orders dismissing their appeals as untimely.[26] On August 18, 2025, the District Court

---

[19] Doc. No. 141.

[20] Doc. No. 140.

[21] *Id.* at ¶ 3.

[22] *Id.* at  ¶ 4.

[23] Doc. Nos. 146 & 147.

[24] *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-00001-TJC (M.D. Fla. Oct. 29, 2024), Doc. No. 156.

[25] Doc. Nos. 149 & 150.

[26] Doc. Nos. 159 & 160.

for the Middle District of Florida affirmed this Court's dismissal of Mr. Myers and Ms. Kelly's appeals.[27]

### E. Debtor appeals the Middle District's Dismissal and Sanctions Orders.

On May 30, 2025—four days after the deadline for filing an appeal from the Bankruptcy Court's May 12, 2025 Dismissal Order and Sanctions Order—Debtor filed an emergency motion to extend the time to appeal those orders (the "Motion to Extend Time to Appeal").[28] On June 11, the Court conducted a hearing and orally denied Debtor's Motion to Extend Time to Appeal.[29]

Notwithstanding the Court's denial of Debtor's Motion to Extend Time to Appeal, on June 12, 2025, Debtor filed a notice of appeal of the Dismissal Order and the Sanctions Order.[30] On June 16, 2025, the Court entered an order memorializing its June 11th oral ruling denying Debtor's Motion to Extend Time to Appeal.[31]

On June 24, 2025, the Court dismissed Debtor's appeal of the Dismissal Order and Sanctions Order as untimely filed.[32] Debtor filed a notice of appeal of that order,

---

[27] Doc. No. 177 (*Kelly v. NBC Club Owner, LLC, et al. (In re 700 Trust)*, Case No. 2:25-cv-537-SPC (M.D. Fla. Aug. 18, 2025), Doc. No. 4); Doc. No. 178 (*Myers v. NBC Club Owner, LLC, et al. (In re 700 Trust)*, Case No. 2:25-cv-540-SPC (M.D. Fla. Aug. 18, 2025), Doc. No. 4). Mr. Myers and Ms. Kelly filed motions to alter or amend the judgments (Doc. No. 6 in both District Court cases). On September 16, 2025, the District Court denied the motions (Doc. No. 7 in both District Court cases).

[28] Doc. No. 148.

[29] Doc. No. 154.

[30] Doc. No. 156.

[31] Doc. No. 157.

[32] Doc. No. 164.

which this Court treated as a motion for District Court review under the Middle District's *Amended General Order Establishing Protocols for Processing Bankruptcy Appeals*.[33]

On August 20, 2025, the District Court for the Middle District of Florida affirmed this Court's dismissal of Debtor's appeal.[34]

### F. The Interested Parties' Application for Attorney's Fees

As directed by the Court in the Sanctions Order, on June 12, 2025, the Interested Parties filed their Application for attorney's fees in which they seek an award of $30,000.00 against Respondents.[35] The Court set a hearing on the Application for July 16, 2025. Counsel for the Interested Parties served notice of the July 16, 2025 hearing on Mr. Gort, Mr. Myers, and Ms. Kelly by email on June 27, 2025, and on Respondents, including Debtor, by first-class mail on June 30, 2025.[36] Mr. Gort also received electronic notice of the hearing via CM/ECF.

Respondents did not file a written response to the Application. At the July 16 hearing, Mr. Gort argued the pending Northern District Appeal—which is now

---

[33] Doc. Nos. 169 & 170.

[34] Doc. No. 179 (*700 Trust v. NBC Club Owner, LLC, et al. (In re 700 Trust)*, Case No. 2:25-cv-631-SPC (M.D. Fla. Aug. 20, 2025), Doc. No. 6). Debtor filed a motion to alter or amend the judgment which the District Court denied (Doc. Nos. 7 & 8 in the District Court case).

[35] Doc. No. 155.

[36] Doc. No. 168.

pending in the Eleventh Circuit—divested this Court of jurisdiction to award sanctions.

The Court permitted the Interested Parties to brief the jurisdictional issue and to file an updated fee application to include any additional fees incurred in responding to the jurisdictional issue.[37] In their Updated Application, Interested Parties request an additional $3,000.00 in fees for a total fee request of $33,000.00.

## II. ANALYSIS

### A. The Court has jurisdiction to impose sanctions against Respondents.

Debtor contends that under the United States Supreme Court's decision in *Griggs v. Provident Consumer Discount Co.,*[38] Debtor's filing the Northern District Appeal divested this Court of jurisdiction to award sanctions. Debtor correctly states that under is known as the "*Griggs* Rule," "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and

---

[37] Doc. Nos. 175 & 176.
[38] 459 U.S. 56 (1982).

*divests the district court of its control over those aspects of the case involved in the appeal.*"[39]

But the *Griggs* Rule is not absolute.[40]

First, numerous courts have recognized that, despite the *Griggs* Rule, a notice of appeal of a non-appealable, non-final order does not affect the lower court's jurisdiction.[41] Second, assuming the *Griggs* Rule does apply, it only applies to the aspects of the case that are involved in the appeal. In other words, the *Griggs* Rule does not apply to "issues different from those before the appellate court."[42]

For the following reasons, the Court concludes that Debtor's argument that the Northern District Appeal divested this Court from awarding sanctions against Respondents has no merit.

---

[39] 459 U.S. at 58 (emphasis added).

[40] *In re Bicoastal Corp.*, 156 B.R. 327, 330 (Bankr. M.D. Fla. 1993) ("The *Griggs* rule is not absolute."); *Brown v. Brown (In re Brown)*, 2007 WL 3326684, at *1 (M.D. Fla. Nov. 6, 2007) ("The rule divesting lower courts of jurisdiction of aspects of a case involved in an appeal is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. 'This rule is not absolute. For example, a district court has jurisdiction to take actions that preserve the status quo during the pendency of an appeal but may not finally adjudicate substantial rights directly involved in the appeal.'") (quoting *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000)) (citation omitted).

[41] *See, e.g.*, *McMahon v. Presidential Airways, Inc.*, 2009 WL 10705557, at *8 (M.D. Fla. Apr. 1, 2009) (concluding that because defendants' notice of appeal sought to appeal a non-appealable discovery order, the court was not divested of jurisdiction to enter further orders, including discovery orders); *Jackson v. Comm'r of Social Security*, 2015 WL 13650915, at *2 (M.D. Fla. May 8, 2015) (citing *United States v. Riolo*, 398 F. App'x 568, 571 (11th Cir. 2010)); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2015 WL 13047885, at *1 – 2 (S.D. Fla. May 19, 2015) ("It is a well established principle that the filing of a notice of appeal deprives a district court of jurisdiction over all of the issues involved in the appeal. . . . Nevertheless, a notice of appeal filed with respect to a non-appealable order does not have any effect on the district court's continuing jurisdiction to adjudicate the case.").

[42] *Fla. Wildlife Fed'n v. Collier Cnty., Fla. (In re Section 20 Land Group, Ltd.)*, 252 B.R. 812, 816 – 17 (Bankr. M.D. Fla. 2000).

To begin with, only one of the orders that are the subject of the Northern District Appeal—the Final Stay Order— is a final, appealable order. The other three orders—the Interim Stay Order, the Show Cause Order, and the Transfer Order—are non-final orders.

A final order is an order "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[43] The Interim Stay Order and the Show Cause Order are non-final orders because they expressly contemplated further proceedings:  the Interim Stay Order provided that Judge Specie would be "issu[ing] a full and final ruling on the [Stay] Motion in the near future,"[44] and the Show Cause Order directed Debtor to appear for a hearing and show cause why the case should not be dismissed or transferred to the Middle District.[45] The Transfer Order is also a non-final order because "orders of transfer . . . are interlocutory and are not appealable."[46]

Therefore, because the Interim Stay Order, the Show Cause Order, and the Transfer Order are non-final, non-appealable orders, the filing of the notices of appeal

---

[43] *Mich. State Univ. v. Asbestos Settlement Tr. (In re Celotex Corp.)*, 700 F.3d 1262, 1265 (11th Cir. 2012) (citations omitted).

[44] Doc. No. 80, p. 4.

[45] Doc. No. 56, p. 3.

[46] *Macon Uplands Venture v. Metro. Life Ins. Co. (In re Macon Uplands Venture)*, 624 F.2d 26, 27-28 (5th Cir. 1980).

of those orders did not divest this Court of jurisdiction to award the Interested Parties' sanctions.

But even if the Interim Stay Order, the Show Cause Order, and the Transfer Order were final orders, they, like the Final Stay Order (which is a final order), addressed different aspects of the case than those addressed by this Court in the Dismissal Order and the Sanctions Order.

The Northern District Appeal involved only two issues: (1) whether the automatic stay under 11 U.S.C. § 362, which otherwise went into effect upon Debtor's bankruptcy filing, applied to the Naples Property or the Naples Litigation; and (2) whether the Northern District of Florida was the proper venue for Debtor's bankruptcy case. These two issues are not the issues presented to this Court in the Dismissal Motion and the Sanctions Motion.[47]

At the May 6, 2025 hearing, this Court outlined its primary reasons for dismissing Debtor's Chapter 11 case: (1) Debtor's failure to do anything to prosecute the case as a reorganization under Chapter 11 of the Bankruptcy Code; and (2) the presence of the factors that bankruptcy courts consider in ruling on motions to dismiss bankruptcy cases as bad faith filings. The Court stated:

---

[47] In fact, Judge Specie explained at the December 18, 2024 hearing on the Interested Parties' Stay Motion that she was not even considering the Interested Parties' request to dismiss this case and for sanctions. Doc. No. 84, p. 10, ll. 3 – 22.

Meanwhile, the 700 Trust Chapter 11 case remains pending in this Court. In the 180 days since Mr. Myers caused the 700 Trust to file the case, other than filing bankruptcy schedules, the Trust's attorney, Michael Gort, has not taken a single step to prosecute the case. For example, Debtor has not filed the Case Management Summary required by Local Rule 2081-1 to be filed within three days of the filing of the case; Debtor has not filed a single Monthly Operating Report as required by the Office of the United States Trustee to be filed on the 21st day of each month for the preceding month; and Debtor has not filed a Chapter 11 Plan and Disclosure Statement. In short, Debtor has done nothing to demonstrate that it filed its Chapter 11 case in an effort to reorganize or to do anything other than to frustrate the foreclosure buyer.

Based on this record, the Court concludes that Mr. Myers and Ms. Kelly, with Mr. Gort's assistance, formed the 700 Trust for the sole purpose of filing this Chapter 11 case to frustrate the foreclosure buyer in concluding the litigation related to and the foreclosure of the Naples property. In fact, Mr. Gort is well aware of Mr. Myers' and Ms. Kelly's litigation regarding the Naples property. This is evidenced by Mr. Gort's November 24th, 2024 removal of an action from the Collier County, Florida Circuit Court. That was Case Number 2009-CA-018813, to the District Court for the Middle District of Florida, Case Number 24-1086.

In the Eleventh Circuit, there's a plethora of cases supporting dismissal of a Chapter 11 as a bad faith filing. I'm referring to the *Phoenix Piccadilly* case, 849 F.2d 1393, a 1998 case of the Eleventh Circuit. . . . [A]nd that case cites to the *Little Creek Development [v]. Commonwealth Mortgage Corporation* case, 779 F.2[d] 1068, which is a 1986 decision from the Fifth Circuit. And, among the factors that courts look at is whether the debtor has few employees, whether the debtor's property is the subject of a foreclosure action as a result of arrearages on the debt, whether the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors, which can be resolved in a pending state court action, and whether the timing of the debtor's filing evidences an intent to delay or

> frustrate the legitimate efforts of the debtor's secured creditors to enforce those rights. All of those factors are present here.[48]

The Court concludes that because this Court's Dismissal Order and Sanctions Order involve issues different from those pending in the Northern District Appeal, the filing of the notices of appeal of the Northern District Bankruptcy Court's Interim Stay Order, Final Stay Order, Show Cause Order, and Transfer Order did not divest this Court of jurisdiction to award the Interested Parties' sanctions.

Finally, although Mr. Gort did not argue that the *Griggs* Rule applied to the efforts of Debtor, Mr. Myers, and Ms. Kelly to obtain District Court review of this Court's dismissal of their untimely appeals of the Dismissal Order and the Sanctions Order, any such argument would be unavailing. This is because "actions that are taken to 'enforce or implement' an order . . . *are permissible*" even when the order being enforced or implemented is on appeal,[49] and the "bankruptcy court possesses jurisdiction over an issue related to the one on appeal when the challenged action implements or enforces the appealed order or judgment or involves issues different from those before the appellate court."[50]

---

[48] Doc. No. 138, p. 22, l. 25 – p. 24, l. 21.

[49] *Henkel v. Lickman (In re Lickman)*, 304 B.R. 897, 905 (Bankr. M.D. Fla. 2004) (quoting *Winimo Realty Corp.*, 270 B.R. 99, 106 – 07 (S.D.N.Y. 2001) (emphasis added).

[50] *Fla. Wildlife Fed'n v. Collier Cnty., Fla.*, 252 B.R. at 816.

Here, liquidating the amount of fees awarded as a sanction does not interfere with the appeals process, it merely implements the Sanctions Order. Therefore, the filing of the notices of appeal of the Dismissal Order and Sanctions Order did not divest this Court of jurisdiction to liquidate the Interested Parties' attorney's fees.

### B.     The Interested Parties' request for attorney's fees is reasonable.

Although Respondents have not challenged the reasonableness of the Interested Parties' fees, the Court has an independent duty to determine whether the attorney's fees the Interested Parties seek are reasonable.[51]

Generally, in assessing the reasonableness of a request for attorney's fees, courts in the Eleventh Circuit use the "lodestar" method.[52] "Courts applying the lodestar approach calculate fees by "'multiply[ing] the number of hours reasonably expended by a reasonable hourly rate.'"[53] There is a strong presumption that the lodestar yields a reasonable fee.[54]

The invoices attached to the Application and the Updated Application reflect that the Interested Parties' counsel worked a total of 105.5 hours on Debtor's Chapter 11 case. Based on the Court's review of the invoices, as well as its familiarity with the

---

[51] *Longhini v. PML Enters., Inc.*, 2018 WL 11256056, at *3 (S.D. Fla. June 14, 2018).

[52] *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

[53] *Sos v. State Farm Mutual Auto. Ins. Co.*, 2023 WL 5608014, at *20 (11th Cir. Aug. 30, 2023) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

[54] *Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc. (In re The Home Depot Inc., Customer Data Security Breach Litigation)*, 931 F.3d 1065, 1082 (11th Cir. 2019).

record in this case, the Court concludes that the 105.5 hours expended by Interested Parties' counsel are reasonable.

Initially, the Court was concerned that some of the hourly rates charged by Interested Parties' counsel may exceed the prevailing market rate in the Middle District of Florida for similar services by lawyers of reasonably comparable skills, experience, and reputation.[55] However, the Interested Parties' counsel have voluntarily reduced their fees to a total of $33,000.00, resulting in a blended hourly rate of $312.80. The Court concludes the blended hourly rate is well within prevailing market rate for attorney's fees in the Middle District of Florida.

Because the hours expended and the blended hourly rate charged by Interested Parties' counsel are reasonable, the $33,000.00 in fees sought is presumptively reasonable. And none of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*[56] warrant a reduction in the fees sought.

### III.   CONCLUSION

For the reasons discussed above, the Court (a) concludes it has jurisdiction to award sanctions against Respondents; and (b) awards the Interested Parties

---

[55] *Norman*, 836 F.2d at 1299 (defining a "reasonable hourly rate" as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation") (citations omitted).

[56] 488 F.2d 714, 717 – 19 (5th Cir. 1974).

$33,000.00 in attorney's fees against Respondents as requested in the Application and the Updated Application.

Accordingly, it is

**ORDERED:**

1.　The Interested Parties' Application and Updated Application are APPROVED.

2.　The $33,000.00 in attorney's fees sought by the Interested Parties are reasonable.

3.　Debtor, Gregory Myers, Barbara Ann Kelly, and Michael Gort are jointly and severally liable to the Interested Parties in the amount of $33,000.00.

4.　Accordingly, the Clerk is directed to enter a judgment in favor of the Interested Parties and against Debtor, Gregory Myers, Barbara Ann Kelly, and Michael Gort in the amount of $33,000.00.

The Clerk's office is directed to serve a copy of this Order on interested parties via CM/ECF.